**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

In re:                                                    )
                                                          )
The Dairy Dozen-Milnor, LLP,                              )    Bankruptcy Case No. 10-30377
d/b/a Five Star Dairy,                                    )    Chapter 11
                            Debtor.                       )
                                                          )

**MEMORANDUM AND ORDER**

A hearing was held on August 3, 2010, pursuant to motions filed by Creditor AgStar Financial Services, PCA and AgStar Financial Services, FLCA (AgStar) to lift the automatic stay and to prevent Debtor The Dairy Dozen-Milnor, LLP from making payments to Prairie Ridge Management, LLC (PRM) pursuant to an order for use of cash collateral and Debtor's motion for an extended order authorizing Debtor to use cash collateral. At the hearing, the Court denied AgStar's motion to lift the automatic stay and granted Debtor's motion for an extended order authorizing the Debtor's use of cash collateral. AgStar's motion to prevent Debtor from making payments to PRM was taken under advisement.

Specifically, in its motion to prevent Debtor from making payments to PRM, AgStar argues that PRM is a "professional person" pursuant to 11 U.S.C. § 327 which requires the Court's approval for employment. Debtor objected to AgStar's motion and argued that PRM is not a "professional person" under 11 U.S.C. § 327 and that its employment does not require the Court's approval.

**FINDINGS OF FACT**

At the hearing, Richard Millner testified he is an 18.18% owner of Debtor and a managing partner. Millner testified he is also part owner of PRM, and PRM's management team consists of employees of the dairies it manages. Millner receives a salary from PRM. Millner testified that PRM was set up at the urging of AgStar. Millner testified that PRM provides Debtor with general and ordinary management of its dairy facility as well as other facilities. This includes daily data entry and

shared feed software, information technology services, nutritionalist and transition facilities in order to keep a closed herd. Millner further testified that using PRM is an economic way of running the dairy by utilizing shared management and, at the same time, allowing for the utilization of Generally Accepted Accounting Principles (GAAP). PRM receives a monthly fee of $6.50 per cow pursuant to the management agreement dated April 16, 2007. Based upon a herd of 1,641 cows, Debtor paid PRM a management fee of $10,666.50 for May 2010. The cash collateral orders entered by this Court authorize Debtor to pay PRM up to $11,500.00 as set out in the cash collateral budget.

## CONCLUSIONS OF LAW

Section 327(a) requires a debtor in possession to obtain the bankruptcy court's approval prior to employing professional persons. By negative implication, a person who is not a professional person may work for a debtor without prior court approval. In re Bartley Lindsay Co, 137 B.R. 305, 308 (Bankr. D. Minn. 1991). If court approval is not required, neither is disinterestedness. In re Century Inv. Fund VII Ltd. P'ship, 96 B.R. 884, 892 (Bankr. E.D. Wisc. 1989). The purpose for requiring court approval of professional persons is to "avoid the enormous potential for abuse in the hiring of consultants, appraisers, business advisors, and others who offer their professional services and expertise to beleaguered Chapter 11 debtors." Id. (citing Dola Int'l Corp. v. Bordlemany (In re Dola Int'l Corp.), 88 B.R. 950, 955 (Bankr. D. Minn. 1988)). The question of whether a dairy management company is a professional person requiring court approval under section 327(a) does not appear to be an issue that has been addressed by courts in previous cases.

Courts have applied different definitions of "professional persons" and different methodologies for determining whether or not a particular individual or entity should be categorized as such. Some courts have defined "professional person" as an individual who takes a central role in the administration of the debtor's bankruptcy estate and bankruptcy proceedings, as opposed to one who provides services to the debtor that are necessary regardless of whether a bankruptcy petition was filed. See  In re

2

Bannerman Holdings, LLC, 2010 WL 2404313 *2-3 (Bankr. E.D. N.C. June 10, 2010); In re Century Inv. Fund VII Ltd. P'ship, 96 B.R. at 893; In re D'Lites of America, Inc., 108 B.R. 352, 355 (Bankr. N.D. Ga. 1989); In re Seatrain Lines, Inc., 13 B.R. 980, 981 (Bankr. S.D. N.Y. 1981); see also In re Florida Airlines, Inc., 110 B.R. 570 (M.D. Fla. 1990). Other courts have categorized individuals and entities given broad discretion or autonomy in the administration of the debtor's bankruptcy estate as "professional persons." See In re Rusty Jones, Inc., 109 B.R. 838 (Bankr. N.D. Ill. 1989); In re Fretheim, 102 B.R. 298 (Bankr. D. Conn. 1989).

What constitutes a professional person under section 327(a) was summarized by the court in In re Seatrain Line, Inc., 13 B.R. 980 (Bankr. S.D. N.Y. 1981), which found that maritime engineers were not professional persons as that term is used under the Bankruptcy Code. The court found that while engineers may be highly educated and have specialized expertise in their field, they do not have a central role in the administration of the bankruptcy case. Id. at 981. The court found that they are important to the functioning or mechanics of the debtor's business, but their employment was not sought because of a need that arose incident to the bankruptcy. Id. Such a role may be contrasted with that of an attorney who appears in bankruptcy proceedings, an appraiser required to value property of the estate, a realtor disposing of property of the estate, or an accountant responsible for tax and court reporting requirements. Id.

Another case, In re Century Inv. Fund VII Ltd. P'ship, involved a debtor who owned an apartment complex and the property management tasks were performed by one of its subsidiaries. 96 B.R. 884 (Bankr. E.D. Wisc. 1989). While a property manager may consider himself or herself a "professional," the court was not persuaded that the person or company that rents apartments and arranges for maintenance is any more professional, in the bankruptcy context, than a maritime engineer or lobbyist. Id. at 893-894. The court found such services to be necessary whether a Chapter 11 had been filed or not, and the nature of the services does not change significantly on account of a

3

bankruptcy. Id. The court stated, "Whether the debtor employed the particular type of professional in its normal business operation before bankruptcy may be a consideration in determining professional status in relation to the bankruptcy." Id. at 894. The practices of similar businesses in that regard are also relevant. In re Johns-Manville Corp., 60 B.R. 612 (Bankr. S. D. N.Y. 1986) (lobbyists are not professional persons under section 327(a)).

A recent unpublished opinion worth discussion applies the same logic to an independent contract agreement employing a property manager for a debtor who is the debtor's member-manager and partial owner and is also a real estate broker. In re Bannerman Holdings, LLC, 2010 WL 2404313. In that case, the court found that the day-to-day business operations by the property manager were performed prior to the initiation of the bankruptcy case as an owner of the property and it was necessary for continued performance of those tasks. Id. at *3. The court also found that 10% of the gross rental income was a reasonable payment to the property manager and there was no evidence to suggest it was excessive. Id. Further, the court found that the manager was not a "professional" within the meaning of section 327(a) and that his employment was in the best interests of the debtor. Id.

Courts disagree as to whether officers or executives of debtor corporations should be classified as "professional persons" under section 327. A few courts, answering this question affirmatively, have held that the employment of officers by the debtor in possession is subject to prior court approval under section 327(a). See In re Florida Airlines, Inc., 110 B.R. 570 (M.D. Fla. 1990); In re Hooper Goode Realty, 60 B.R. 328 (Bankr. S.D. Cal. 1986). A majority of the courts, however, have held that continued employment of the debtor corporation's officers does not require prior court approval. In re All Seasons Indust., Inc., 121 B.R. 822, 825 (Bankr. N.D. Ind. 1990); In re Phoenix Steel Corp., 110 B.R. 141 (Bankr. D. Del. 1989); In re Midland Capital Corp., 82 B.R. 233, 239 (Bankr. S.D. N.Y. 1988); In re Lyon & Reboli, Inc., 24 B.R. 152, 154 (Bankr. E.D. N.Y. 1982).

4

The court in In re Century Inv. Fund VII Ltd. P'ship discussed the issue of a sole asset of a debtor being run by principals of the debtor. The court stated:

> Who else would the creditors expect to be running the show? It is contemplated by the Code that the debtor will continue to operate its business unless and until an independent trustee or examiner is appointed. 11 U.S.C. § 1104. It makes no sense to allow the debtor to manage the property under 11 U.S.C. § 1104, but not to allow it to manage the property using a corporation controlled by its principals, probably with the same personnel. The requirements of 11 U.S.C. § 1104 for appointment of a trustee or examiner should not be sidestepped by the unwarranted use of 11 U.S.C § 327(a).

96 B.R. at 894.

This Court is inclined to follow the cases that define "professional person" as an individual who takes a central role in the administration of the debtor's bankruptcy estate and bankruptcy proceedings, as opposed to one who provides services to the debtor that are necessary regardless of whether a bankruptcy petition was filed.

Richard Millner testified he is an 18.18% owner of Debtor and a managing partner. Millner testified he is also part owner of PRM, and PRM's management team is made up of employees of the dairies it manages. Millner receives a salary from PRM. Millner testified that PRM was set up at the urging of AgStar. Millner testified that PRM provides Debtor with general and ordinary management of its dairy facility as well as other facilities. This includes daily data entry and shared feed software, information technology services, nutritionalist and transition facilities in order to keep a closed herd. Millner further testified that using PRM is an economic way of running the dairy by utilizing shared management and, at the same time, allowing for the utilization of Generally Accepted Accounting Principles (GAAP). PRM receives a monthly fee of $6.50 per cow pursuant to the management agreement dated April 16, 2007. Based upon a herd of 1,641 cows, Debtor paid PRM a management fee of $10,666.50 for May 2010. There is no evidence suggesting the amount paid by Debtor to PRM is excessive. The cash collateral orders entered by this Court authorize Debtor to pay PRM up to

$11,500.00 as set out in the cash collateral budget. The daily management of Debtor is a necessity regardless of the existence of the bankruptcy.

The Court notes that AgStar argues in its brief that in a related proceeding out of South Dakota, "PRM was held to have been rendering 'professional services' within the meaning of 11 U.S.C. § 327." AgStar cites In re Veblen West, LLP, Bankr. No. 10-100071, (Bankr. S.D.) (Decision re: Motion to Appoint a Trustee, Docket #282). After thorough review, this Court finds no such holding by the South Dakota Bankruptcy Court in its Decision re: Motion to Appoint a Trustee. The court states in a footnote that there is "clear evidence that [PRM] is rendering professional services to debtor." AgStar mischaracterizes the court's dicta as its holding, as the decision does not discuss section 327 or make a determination that PRM is a "professional person" within the meaning of section 327. Morever, providing professional services is not the test for determining whether an entity is a "professional person" under section 327, as discussed above. The instant case can also be distinguished from the South Dakota bankruptcy case by the important fact that this Court previously considered a motion to appoint a trustee by AgStar and this Court denied that motion.

Based upon the foregoing, the Court finds that PRM is not a "professional person" within the meaning of 11 U.S.C. § 327(a). Therefore, disinterestedness is not at issue. See In re Century Inv. Fund VII Ltd. P'ship, 96 B.R. at 892. Accordingly, Agstar's motion to prevent Debtor The Dairy Dozen-Milnor, LLP, from making payments to Prairie Ridge Management, LLC, is in all things, **DENIED**.

**SO ORDERED**

Dated this 15th day of September, 2010

**WILLIAM A. HILL, JUDGE**
**U.S. BANKRUPTCY COURT**

6